IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| S. H., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Case No. 5:22-cv-113-CHW |
| : | |
| COMMISSIONER OF SOCIAL SECURITY, : | Social Security Appeal |
| : | |
| Defendant. : | |
| : | |

## ORDER

This is a review pursuant to 42 U.S.C. § 405(g) of a final decision of the Commissioner of the Social Security Administration denying Plaintiff S.H.'s application for disability benefits. The parties consented to have a United States Magistrate Judge conduct proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals. Because the ALJ properly assessed Plaintiff's possible fibromyalgia under SSR 12-2P, and because substantial evidence supports the ALJ's findings, the Commissioner's final decision in Plaintiff's case is **AFFIRMED**.

## BACKGROUND

Plaintiff S.H. was born on March 16, 1976. Plaintiff applied for Title II and Title XVI disability benefits in June 2019, alleging disability arising as of August 1, 2017, due to seizures, a prior extremity fracture, anxiety and depression, and symptoms of pain associated with lupus or fibromyalgia. (R. 86). After Plaintiff's applications were denied initially and on reconsideration at the state agency level of review (1A–8A), Plaintiff requested further review before an Administrative Law Judge (ALJ).

1

At a hearing before the ALJ in April 2021, Plaintiff explained that she began suffering from seizures in 2014, but that her seizures worsened following a pregnancy in 2017. (R. 46). Plaintiff also cited her symptoms of pain, fatigue, and memory loss, and Plaintiff invoked Listing 14.03 (Lupus) as a possible basis for finding disability. (R. 46–47).

In April 2021, the ALJ issued an opinion finding that Plaintiff was not disabled within the meaning of the Social Security Act. In relevant part, the ALJ found that Plaintiff could perform a limited range of sedentary work, that Plaintiff retained the capacity to understand, remember, and carry out both simple and detailed instructions, and that Plaintiff's symptoms would not prevent her from maintaining concentration for two-hour periods at a time. (R. 23). Plaintiff subsequently requested further review before the Appeals Council, but in November 2021, the Appeals Council declined Plaintiff's request for further administrative review. (R. 6–7).

Plaintiff now seeks judicial review of the Commissioner's decision on three grounds: (1) that the ALJ erred in his assessment of Plaintiff's possible fibromyalgia, (2) that the ALJ erred by discounting the opinion of Dr. Shannon Barton, a primary care physician, and (3) that the ALJ erred by discounting Plaintiff's report of her subjective symptoms. As discussed below, Plaintiff's arguments do not warrant a remand. Rather, because substantial evidence supports the ALJ's findings, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the

evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## MEDICAL RECORD

The earliest available medical evidence records Plaintiff's periodic treatment at Jasper Memorial Hospital from 2002 to 2013. In March 2002, Plaintiff sought care at Jasper for nausea and diarrhea attributed to a bladder inflammation. (R. 469-70). In June 2002, Plaintiff returned to Jasper with complaints of arthritis, along with congestion and an earache attributed to possible strep throat. (R. 465-466).

In February 2003, Plaintiff received care at Jasper for an anaphylactoid reaction associated with her treatment for gestational diabetes. (R. 425–26). Plaintiff's symptoms manifested as a hive-like rash, extremity swelling, and shortness of breath, but the record indicates that her condition improved upon treatment with Allegra, Prednisone, and Benadryl. (R. 425–26, 431, 436, 441).

In July 2005, Plaintiff returned to Jasper for care relating to head and back pain associated with a motor vehicle accident. (R. 408). An x-ray study revealed no evidence of any fracture, malalignment, or soft tissue swelling, (R. 411), and Plaintiff was discharged with instructions to follow up with her primary care physician as needed. (R. 413). Thereafter, in September 2007, Plaintiff returned to Jasper for care relating to dizziness and blurred vision, which symptoms were treated with Medrol. (R. 550). In December 2007, an x-ray study of Plaintiff's left hand revealed no irregularities. (R. 533). Finally, in March 2013, Plaintiff sought care at Jasper for a panic attack, for which Plaintiff treated with Prozac. (R. 526).

Plaintiff additionally sought treatment, in March 2013, from the DeKalb Medical Physicians Group after she suffered from a seizure at work. (R. 747). The record indicates that Plaintiff's treatment with the medication Lamictal (lamotrigine) alleviated both her seizures as well as related symptoms of periodic dizziness and tingling.

In April 2014, Plaintiff sought care from Dr. Barton Shannon, a primary care physician, chiefly for left wrist pain that was treated with Vimovo. (R. 610). The next available medical record shows that Plaintiff again sought care at Jasper Memorial Hospital in May 2016 after she suffered from another seizure. (R. 497). Records from the DeKalb Medical Physicians Group indicate that Plaintiff "ha[d] issues with transportation and finances" during this time. (R. 764). Plaintiff's renewed treatment with Lamictal (R. 499) again alleviated her seizure symptoms, although Plaintiff reported episodes of severe morning sickness associated with a pregnancy. (R. 769).

Plaintiff's treatment records during 2017 and 2018 focused primarily on a tailbone sprain (R. 606–07), anxiety (R. 592), management of her depression medication dosage (R. 599, 601), and the management of pain associated with an old fracture of the right hand. (R. 594–95).

Beginning in January 2019, Plaintiff reported the symptom of worsening "generalized muscle pain." (R. 586). Dr. Barton initially diagnosed this condition as myalgia and prescribed Prednisone. (R. 584, 586). By August 2019, when Plaintiff reported the additional symptom of internal itching, Dr. Shannon diagnosed Plaintiff with peripheral polyneuropathy and pruritis, for which Dr. Shannon prescribed Gabapentin. (R. 579–80).

Plaintiff also treated, during this same period, with Dr. Faryal Baloch, a rheumatologist, who diagnosed Plaintiff with lupus in March 2019. (R. 628). Dr. Baloch directed Plaintiff to treat with the medication Plaquenil. (R. 628). In a section of treatment notes titled "rheumatology," Dr. Baloch's treatment notes consistently show findings of no tenderness and a normal range of motion. (R. 616, 619, 622, 625, 628, 631, 680).

Plaintiff also received care, during this same period, at Emory Neurology and Sleep Medicine primarily for seizures associated with an inadequate dosage of Lamotrigine. (R. 559). During these appointments, physical and mental status examinations revealed a normal gait, normal extremity coordination, normal muscle strength, and intact attention and concentration. (R. 562, 570, 778, 782, 792, 798, 842). The record indicates that Plaintiff received diagnoses of both lupus and fibromyalgia in September 2019. (R. 574). Additionally, based on Plaintiff's continued report of seizures (R. 796, 806), Plaintiff underwent an EEG study in June 2019 with Dr. Aijaz Khalid at the Pediatric Neurology & Epilepsy Center. (R. 845). That EEG study revealed only normal results. (R. 846). So too did a follow-up EEG study conducted in December 2020. (R. 857–58).

The remaining medical records show that Plaintiff sat for a rheumatology consultation at Piedmont Healthcare in October 2020, where Plaintiff's described symptoms of fatigue, weakness, headaches, pain, and swelling were ascribed either to polyarthralgia, polymyalgia, possible fibromyalgia, or a vitamin D deficiency. (R. 871, 880). Plaintiff treated for these symptoms with Dr. Barton in April 2020, and then again in August 2020, when Dr. Barton increased Plaintiff's Gabapentin dosage (R. 744) and provided a dexamethasone injection. (R. 824). A further treatment record from September 2020 focused on largely Plaintiff's psychological symptoms, as well as on her request for a flu shot. (R. 847).

Thereafter, in March 2021, Dr. Barton completed a form questionnaire by indicating that Plaintiff was constantly in pain rated at 8-9 out of 10, that Plaintiff could not stand or walk at all during an 8-hour workday, that Plaintiff could only sit for 30 minutes at a time and for only 3 hours total during an 8-hour workday, and that Plaintiff was entirely unable to perform repetitive, upper extremity tasks like grasping, pushing/pulling, and fine manipulation. (R. 884–88).

## DISABILITY EVALUATION IN PLAINTIFF'S CASE

Following the five-step sequential evaluation process, the reviewing ALJ made the following findings in Plaintiff's case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2017, her alleged onset date. (R. 19). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "Seizure disorder, Lupus, Degenerative disc disease, Peripheral neuropathy, Neurocognitive disorder, Depression, Anxiety, [and] Obesity." (R. 19).

At step three, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19). Therefore, the ALJ

assessed Plaintiff's RFC and found that through her date last insured, Plaintiff could perform sedentary work with the following limitations:

> She can occasionally balance, stoop, kneel, crouch, and crawl. She can perform work that is never expected to require exposure to hazards such as unprotected heights, and moving machine parts, and that never requires operating a motor vehicle. She can understand, remember, and carry out simple and detailed instructions. She can concentrate sufficiently to perform complex tasks for two hours at a time without reminders or redirection. After an initial training period she can occasionally interact with supervisors, co-workers and the public.
>
> (R. 23)

Based on this RFC, the ALJ determined at step four that Plaintiff was unable to perform her past relevant work as a bus driver, teacher's assistant, or nursing assistant. (R. 28–29). At step five, the ALJ found that Plaintiff could adjust to the requirements of other jobs including polisher, circuit board inspector, and document preparer. (R. 29–30). Accordingly, based on this step five finding, the ALJ ruled that Plaintiff was not disabled within the meaning of the Social Security Act.

## ANALYSIS

For three reasons, Plaintiff argues that the ALJ's fibromyalgia analysis was deficient. Those reasons are: (1) that the ALJ erred at step two by failing to find that Plaintiff's fibromyalgia was a medically determinable impairment, (2) that the ALJ erred in his assessment of Dr. Shannon Barton's opinion, and (3) that the ALJ did not properly assess Plaintiff's own account of her subjective symptoms. As discussed below, Plaintiff's arguments do not warrant a remand.

**(1)** **Step Two Analysis**

Plaintiff's step-two argument implicates SSR 12-2P ("evaluation of fibromyalgia"), which represents an effort to delineate objective standards for the evaluation of fibromyalgia within the

social security disability context. The SSR's need arises from the fact that fibromyalgia "often lacks medical or laboratory signs, and is generally diagnosed mostly on a[n] individual's described symptoms." *Moore v. Comm'r*, 405 F.3d 1208, 1211 (11th Cir. 2005). Moreover, the symptoms of fibromyalgia "can wax and wane," *Laurey v. Comm'r*, 632 Fed. App'x 978, 988 (11th Cir. 2015), and they often resemble the symptoms produced by a range of other disorders.

SSR 12-2P provides two similar methods for determining whether fibromyalgia is a medically determinable impairment. A claimant can show (1) a history of widespread pain, (2) eleven positive tender points, and (3) evidence ruling out other disorders as the cause (SSR 12-2P II(A)), or (1) a history of widespread pain, (2) repeated manifestations of six or more signature symptoms, and (3) evidence ruling out other disorders as the cause (SSR 12-2P II(B)).

In Plaintiff's case, the ALJ expressly found at step two that "[t]he medical record … does not include a fibromyalgia diagnosis consistent with Social Security Ruling 12-2p." (R. 19). Although the medical record shows that Plaintiff received several tentative diagnoses of fibromyalgia, *see, e.g.*, (R. 843) (Dr. Joseph Weissman at Emory Healthcare), (R. 880) (Dr. Aloice Aluoch, Piedmont Healthcare), none of these diagnoses satisfied subpart three of SSR 12-2P II(A) and II(B) by ruling out other disorders as the source of Plaintiff's symptoms. Indeed, the medical record shows multiple alternative diagnoses of chronic fatigue syndrome or lupus (R. 616), polyarthralgia or polymyalgia (R. 880), and rheumatoid arthritis (R. 845).

Given these multiple, different possible sources of Plaintiff's symptoms, the ALJ correctly followed SSR12-2P by declining to find that Plaintiff's fibromyalgia was a medically determinable impairment, and by instead analyzing Plaintiff's symptoms as the product of other impairments, particularly lupus. (R. 19). *See SSR* 12-2p, 2012 WL 3104869 at *2 ("If we cannot find that the person has an MDI of FM but there is evidence of another MDI, we will not evaluate the

impairment under this Ruling. Instead, we will evaluate it under the rules that apply for that impairment."). Hence, the ALJ committed no step two error.

**(2)     Dr. Shannon Barton**

In March 2021, Dr. Shannon Barton, a primary care physician, completed a questionnaire in which she stated that Plaintiff constantly suffered from pain rated at a 8-9 out of 10, that Plaintiff could not use her upper extremities for repetitive motion like grasping or pushing, that Plaintiff could only sit for 30 minutes at a time and for 3 hours in total during an 8-hour workday, and that Plaintiff could not stand and/or walk at all during an 8-hour workday. (R. 884–86).

Plaintiff argues that the ALJ erred by discounting Dr. Barton's opinion, but the ALJ's ruling is both well-articulated and supported by substantial evidence. The ALJ cited two grounds for his decision. First, Dr. Barton's questionnaire opinion is conclusory — as the ALJ put it, the opinion "was expressed in a pre-printed form and the doctor did not present any findings to support [her] opinion despite being prompted to do so." (R. 27). *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (explaining, under the old treating physician rule, that physician's opinion may be discounted when conclusory).

Second, and more importantly, the ALJ explained that Plaintiff's treatment notes do not support the severe degree of functional restriction proposed by Dr. Barton in her March 2021 questionnaire. In so doing, the ALJ properly considered the factors of supportability[1] and consistency[2] under 20 C.F.R. § 404.1520c(c). Regarding supportability, Dr. Barton's own records indicate that Plaintiff largely managed her symptoms through conservative care consisting

---

[1] "Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[2] "Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

primarily of treatment with the medications Gabapentin and Plaquenil. Regarding consistency, the ALJ did not err by deferring to notes from Dr. Faryal Baloch, a rheumatologist, who repeatedly found on examination that Plaintiff displayed no symptoms of tenderness and that Plaintiff displayed a normal range of motion. (R. 616, 619, 622, 625, 628, 631, 680). Because the ALJ properly considered Dr. Barton's form opinion in accordance with 20 C.F.R. § 404.1520c(c), and because substantial evidence supports the ALJ's articulated bases for discounting that opinion, no remand is warranted.

**(3)** **Subjective Symptoms**

Third and finally, Plaintiff argues that the ALJ erred by discounting Plaintiff's report of her subjective symptoms, and particularly Plaintiff's report that pain limited her ability to concentrate. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

As explained by the ALJ, records from Plaintiff's treatment at Emory Neurology and Sleep Medicine consistently revealed findings that Plaintiff was alert and oriented, that she demonstrated a normal gait and good muscle strength, that she exhibited normal extremity coordination, and most importantly, that Plaintiff displayed intact attention and concentration. (R. 562, 570, 778, 782, 792, 798, 842). These treatment records, along with Dr. Baloch's rheumatological treatment records discussed above, amply support the ALJ's decision to discount, in part, Plaintiff's assertion that her pain inhibited her ability to concentrate to a disabling degree. *See* (R. 338) (claimant function report). Because substantial evidence supports the ALJ's well-articulated credibility ruling, no remand is warranted.

## CONCLUSION

For the reasons discussed herein, the Commissioner's decision denying Plaintiff S.H.'s application for disability benefits is **AFFIRMED**.

**SO ORDERED**, this 28th day of March, 2023.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge
